# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

DILLION GAGE                                   CIVIL ACTION NO.:  18-CV-990-JWD-RLB

VERSUS

CANAL BARGE CO., INC., ET AL.

### RULING ON MOTION FOR SUMMARY JUDGMENT
### BROUGHT BY CANAL BARGE CO., INC., AND CANAL
### BARGE INTERNATIONAL, LLC

Before the Court is the *Motion for Summary Judgment* brought by Canal Barge Co., Inc., and Canal Barge International, LLC (collectively, "CBC" or "Defendants"). (Doc. 10.) The motion is opposed. (Doc. 14.) Defendants filed a reply brief. (Doc. 15.) Oral argument is not necessary. The Court has carefully considered the law, facts in the records, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted in part and denied in part.

## I.      BACKGROUND AND SUMMARY OF ARGUMENTS

Plaintiff Dillon Gage ("Plaintiff" or "Gage") sues Defendants for personal injuries under the Jones Act, 46 U.S.C. § 30104. (Doc. 1 at 2.) Alternatively, Plaintiff brings his claim pursuant to 33 U.S.C. § 905(b). (*Id.*) Plaintiff alleges that on January 23, 2018, while employed by Defendants, he injured his lower back while lifting a Yamaha outboard motor onto the bed of a pickup truck. (*Id.* at 3, ¶¶ VII-VIII; *see also* Doc. 10-4 at 50-56[1]). Defendants move for summary judgment arguing that Plaintiff was, as a matter of law, neither a seaman for purposes of the Jones Act, nor is he entitled to recover under § 905(b) for this land-based accident.

---

[1] Defendants attach portions of Plaintiff's deposition at Doc. 10-4; Plaintiff does the same at Doc. 14-2.  When the Court refers to page numbers in these and other exhibits attached to the parties' briefing, it uses the record document page numbers and not the deposition page numbers.

CBC is in the business of moving bulk and liquid cargo on the inland waters of the United States by way of barges. (Doc. 10-1 at 1, ¶ 2.) Plaintiff began work for CBC in September of 2015 as a deckhand aboard CBC tugs. (*Id*. at ¶ 3; *see also* Doc. 14-2 at 6.) In approximately December of 2017,[2] Plaintiff requested a transfer to another position: barge readiness technician. (Doc. 14-2 at 4.) CBC contends that Plaintiff's transfer was to the "shoreside department," that his connection to vessels was no longer "substantial," and therefore, he was therefore no longer a seaman. (Doc. 10-2 at 11-19.)

CBC maintains that Plaintiff's transfer to his new position as a barge readiness technician would have lasted "at least one year and [he] would have continued to work as a barge readiness technician if not for the incident." (Doc. 10-1 at 2, ¶ 5.) As a result, argues CBC, while Plaintiff "may once have been a seaman while employed by CBC as a deckhand, when he transferred to the shoreside department and was moved to the barge readiness department, his status *permanently* changed." (Doc. 10-2 at 13; emphasis added.) "Therefore, to determine seaman status, the review of Plaintiff's job duties, responsibilities, and connection to vessels must be limited to the period Plaintiff worked as a shoreside barge readiness technician." (*Id*.) Since Plaintiff was no longer a seaman following this permanent transfer, Defendants are entitled to summary judgment on the issue of seaman status. In addition, Defendants maintain that since Plaintiff's accident occurred on land, without any vessel involvement, he cannot recover under § 905(b).

Plaintiff, on the other hand, contends that his transfer to the new position was not permanent but was only an intermediary step to achieving his ultimate goal of becoming a tankerman aboard CBC barges, indisputably seamen's work. (Doc. 14 at 2.) Therefore, "a

---

[2] While Defendants state that the transfer occurred in "late 2018" (Doc. 10-1 at 2; Doc. 10-2 at 3), this is an apparent error as Plaintiff was injured on January 23, 2018. (Doc. 10-1 at 8, ¶ 47.)

genuine issue of material fact arises with respect to whether Mr. Gage's new assignment was permanent or temporary." (*Id.* at 12.) If temporary, Plaintiff's entire employment with CBC, including over two years as a deckhand, can be considered in determining his seaman status. This would make Plaintiff's time performing seaman's work far in excess of the 30% necessary to survive summary judgment. (Doc. 14 at 11 (citing *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 375 (5th Cir. 2001).)

Alternatively, even if the Court limits its analysis to Plaintiff's duties as a barge readiness technician, Gage's duties as such "included [] building tow, helping put running lights out, inspecting barges for any damage, pumping out water in the hatches, physically cleaning stains on the deck, and assisting with the shifting of barges," all duties of a traditional seaman performed aboard an identifiable fleet of vessels. (Doc. 14 at 5; citations to record omitted.) Indeed, Plaintiff maintains that the majority of his time as a barge readiness technician was spent doing seaman's work, at least raising a question of fact as to the "substantial connection" prong of the seaman's test. (*Id.* at 10-12.) In sum, argues Plaintiff, significant questions of fact exist regarding his status a seaman and therefore summary judgment is inappropriate. Plaintiff does not address the § 905(b) issue raised in Defendants' motion.

## II.    STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .   [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475

U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In the context of the specific summary judgment before the Court, "[t]he determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact and it is usually inappropriate to take the question from the jury." *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 931 (5th Cir. 2014) (quoting *Becker v. Tidewater, Inc.*, 335 F.3d 376 (5th Cir. 2003). *See also Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) ("The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury."); *Bernard v. Binnings Const. Co.*, 741 F.2d 824, 828 (5th Cir. 1984) ("[S]ummary judgment on seaman status is proper where the only rational inference to be drawn from the evidence is that the worker is not a seaman.") (quoting *Beard v. Shell Oil Co*, 606 F.2d 515, 517 (5th Cir. 1979)); *Starks v. Advantage Staffing, LLC*, 202 F. Supp. 3d 607, 611 (E.D. La. 2016) ("[T]he issue of seaman status is ordinarily a jury question, even when the claim to seaman status is marginal.") (quoting *White v. Valley Line Co.,* 736 F.2d 304, 305 (5th Cir.

1984)). "Thus, summary judgment on seaman status in Jones Act cases is rarely proper." *Starks*, 202 F. Supp. 3d at 611 (citing *Bouvier v. Krenz*, 702 F.2d 89, 90 (5th Cir. 1983)).

## III.    TEST FOR SEAMAN STATUS

To determine if a worker is a seaman, the Supreme Court has established a two-pronged test: "First, 'an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission.' Second, 'a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature.'" *Naquin*, 744 F.3d at 932-33 (quoting *Becker v. Tidewater, Inc.,* 335 F.3d 376, 387 (5th Cir. 2003), in turn, quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995).)

### A.  VESSEL

Central to both prongs of the test is the presence of a "vessel in navigation" or "identifiable fleet" of such vessels to which the worker has a substantial employment-related[3] connection and whose duties contribute to the function or mission of the vessel or fleet. In *Stewart v. Dutra Const. Co*., 543 U.S. 481, 489 (2005), the Court looked primarily to 1 U.S.C. § 3 to define the word "vessel." "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3.

But for seaman status purposes, *Stewart* narrowed the statutory definition by requiring that the craft be practically, not merely theoretically, capable of transportation on water. "[A] 'vessel' is any watercraft *practically* capable of maritime transportation, regardless of its primary

---

[3] While *Chandris* does not make this explicit, it is clear that there must be a substantial *employment* connection between the worker and the vessel or fleet in order for a worker to be a seaman. "The key to seaman status is *employment*-related connection to a vessel in navigation. We are not called upon here to define this connection in all details, but we hold that a necessary element of the connection is that a seaman perform the work of a vessel." *McDermott Int'l., Inc. v. Wilander*, 498 U.S. 337, 355, (1991) (emphasis added).

purpose or state of transit at a particular moment." 543 U.S. at 497 (emphasis added).[4] In

*Lozman v. City of Riviera Beach*, 568 U.S. 115 (2013), the Supreme Court considered whether a

floating home was a vessel. Therefore, the Court further refined the definition by focusing on

the craft's practical capacity as "a means of transportation on water." The Court stated, "in our

view a structure does not fall within the scope of this statutory phrase unless a reasonable

observer, looking to the home's physical characteristics and activities, would consider it designed

to a practical degree for carrying people or things over water." *Id*. at 121.

## B. VESSEL "IN NAVIGATION"

As to the requirement that the vessel be "in navigation," the Court in *Stewart* made clear

that this phrase was not to be literally applied.

> Granted, the Court has sometimes spoken of the requirement that a vessel be "in navigation," but never to indicate that a structure's locomotion at any given moment mattered. Rather, the point was that structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time. The Court did not mean that the 'in navigation' requirement stood apart from § 3, such that a 'vessel' for purposes of § 3 might nevertheless not be a "vessel in navigation" for purposes of the Jones Act or the LHWCA.

> Instead, the "in navigation" requirement is an element of the vessel status of a watercraft. It is relevant to whether the craft is 'used, or capable of being used' for maritime transportation. A ship long lodged in a drydock or shipyard can again be put to sea, no less than one permanently moored to shore or the ocean floor can be cut loose and made to sail. The question remains in all cases whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one."

*Stewart*, 543 U.S. 481, 496 (internal citations omitted).

## C. "IDENTIFIABLE FLEET" OF VESSELS

Workers who are not assigned to a single vessel but perform a seaman's duties aboard

multiple vessels may qualify for seaman status when the vessels are commonly owned or

---

[4] "The question remains in all cases whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one." *Stewart*, 543 U.S. at 496.

controlled. "An important part of the test for determining who is a seaman is whether the injured worker seeking coverage has a substantial connection to a vessel or a fleet of vessels, and the latter concept requires a requisite degree of common ownership or control." *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 560 (1997).

### D.  CONTRIBUTION TO FUNCTION OR MISSION OF VESSEL OR FLEET

As to the first prong of the *Chandris* test, requiring that the worker's duties contribute to vessel's function or mission, the Supreme Court specifically rejected the notion that one must "hand, reef or steer" the vessel, *i.e.* aid in its navigation, in order to be a seaman. *McDermott International, Inc. v Wilander*, 498 U.S. 337, 343, 355 (1991).  Meeting this part of the test "is relatively easy: the claimant need only show that he does the ship's work." *Naquin*, 744 F.3d at 933 (quoting *Becker*, 335 F.3d at 387). "This threshold requirement is 'very broad,' encompassing 'all who work at sea in the service of a ship.'" *Becker*, 335 F.3d at 388 (quoting *Chandris*, 515 U.S. at 368). "It is difficult to imagine a case in which a worker performs substantial work on a vessel without contributing to its mission." THOMAS M. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, § 6:9 (6th ed. 2018).

A wide variety of occupations different from traditional seaman's work have been found to meet this part of the test: for example, in *Wilander*, 498 U.S. at 343, 355, plaintiff was a painter foreman supervising the sandblasting and painting of piping on oil drilling rigs in the Persian Gulf. In *Grab v. Boh Brothers Construction Co*., 506 F. App'x. 271 (5th Cir. 2013), iron workers involved in a major bridge construction project over Lake Pontchartrain were found to be seaman.

The second prong of the test focuses on the worker's connection to the vessel or fleet of vessels.

The purpose of the substantial connection requirement is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based maritime workers who have only a transitory or sporadic connection to a vessel in navigation and therefore whose employment does not regularly expose them to the perils of the sea."

*Zertuche v. Great Lakes Dredge & Dock Co., LLC*, 306 F. App'x 93, 95 (5th Cir. 2009) (quoting

*Chandris, Inc*, 515 U.S. at 368).

The connection must be "substantial in terms of both duration and nature." *Naquin*, 744

F.3d at 933 (quoting *Chandris, Inc.*, 515 U.S. at 368). "Thus, a worker seeking seaman status

must separately demonstrate that his connection to a vessel or fleet of vessels is, temporally,

more than fleeting, and, substantively, more than incidental. These inquiries are not always

distinct but are interrelated elements of the same substantial connection requirement." *Id.* at 933.

## E.  SUBSTANTIAL IN DURATION

When considering the duration element, "[w]here the worker divides his time between

vessel and land, an employee can only establish the requisite connection to a vessel—and thus

qualify as a seaman—if he spends a substantial portion of his time in service of the vessel." *Grab*

*v. Boh Bros. Const. Co.*, 506 F. App'x 271, 277 (5th Cir. 2013). To measure the substantiality of

the worker's vessel-based work, the Court in *Chandris* adopted the Fifth Circuit's 30%

guideline: where a worker divides his time between land-based and vessel-related service, "[a]

worker who spends less than 30% of his time in the service of a vessel in navigation should not

qualify as a seaman under the Jones Act." *Chandris*, 515 U.S. at 371.

Ordinarily, when determining the percentage of a plaintiff's vessel-based work, the Court

looks to the "entire length of a plaintiff's employment with the defendant." *Zertuche*, 306 F.

App'x at 96. But there is an exception to this general rule, "[w]hen a maritime worker's basic

assignment changes." *Chandris*, 515 U.S. at 372; *see also Becker*, 335 F.3d at 389; *Zertuche*, 306

F. App'x at 95-96. "If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assignment of the substantiality of his vessel-related work made on the basis of his new position." *Chandris*, 515 U.S. at 372. Stated another way, where the worker's employer reassigns him "to a new position" that represents a "substantial" or "fundamental" change in status, then only the time spent in his new position will be considered in determining whether the temporal requirement is met. *Becker*, 335 F.3d 389-90. This is sometimes called the "change-of-assignment doctrine." David W. Robertson & Michael F. Sturley, *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits*, 36 TUL. MAR. L.J. 425, 489-90 (2012).

There is no bright line rule regarding when a new assignment involves a change so substantial, fundamental or permanent as to limit the Court's consideration of the employee's vessel-related work to the new assignment. This is because, as the Fifth Circuit has said,

> how long a seaman's status continues after a shoreside assignment is itself a fact question dependent on such factors as the duration of the assignment, its relationship to the employer's business, whether the employee was free to accept or reject it without endangering his employment status and any other factors relevant to the ultimate inquiry: at the moment of injury was the employee a seaman by conventional Jones Act criteria who happened not to be on navigable waters, or was he at that time no longer a seaman whatever his past relationship or his future prospects?

*Guidry v. S. Louisiana Contractors, Inc.*, 614 F.2d 447, 453 (5th Cir. 1980).

While it is not entirely clear, there is some suggestion in Fifth Circuit jurisprudence that the new assignment must be *permanent* in order to limit the Court's duration-related inquiry to the time spent in the employee's new assignment. In *Becker v. Tidewater, Inc.*, 335 F.3d 376 (5th Cir. 2003), the court summarized what plaintiff was required to prove in order to establish that he "underwent a change in status and became a seaman[:]… that (i) when plaintiff was assigned to the REPUBLIC TIDE, he was removed from his former position of land-based intern and

assigned to a new, sea based position, (ii) this reassignment *permanently* changed his status, and (iii) by serving in this new position, plaintiff would spend at least 30% of his time aboard a vessel." *Becker*, 335 F.3d at 390 (emphasis added).

As Judge Doherty wrote in *Sepulvado v. Alpha Drilling, LLC,* 730 F. Supp. 2d 591, 598 (W.D. La. 2010), "[a]lthough the Supreme Court in *Chandris* did not explicitly state the changes to the maritime worker's basic assignment must be 'permanent,' the Fifth Circuit in *Becker* appears to have read a 'permanent change' requirement into the *Chandris'* exception to the general rule…" Judge Doherty's reading of *Becker* is supported by the Fifth Circuit's summary of *Becker's* holding in *Zertuch*. There the court said, "We concluded that Becker did not fit into the exception for *permanently* reassigned employees because he was only *temporarily* assigned to the vessel and would have returned to land-based work immediately after the voyage." *Zertuch,* 306 F. App'x at 96 (emphasis added); *see also Ross v. W&T Offshore, Inc.*, 357 F. Supp. 3d 554, 564 (E.D. La. 2018) (granting employer's summary judgment motion on seaman status based on uncontroverted record evidence that plaintiff had been permanently reassigned to a non-vessel).

### F.  SUBSTANTIAL IN NATURE

The worker's connection to the vessel or fleet must also be substantial "*in nature*." *Chandris* did not define the phrase "substantial in nature" or provide a test to measure when this element is met. This is because the inquiry into whether the worker's vessel-related connection is substantial in nature "is necessarily fact specific, as it 'will depend on the nature of the vessel and the employee's precise relationship to it.' " *Philip v. Hornbeck Offshore Services, L.L.C*., 137 F. Supp. 3d 936, 945, (E.D. La. 2015) (quoting *Chandris*, 515 U.S. at 371 (quoting *Wilander*, 498 U.S. at 356)).

However, gloss by the Supreme Court in *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 555 (1997) provided a clue to the meaning of "substantial in nature" when it stated, "[f]or the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea." But the Fifth Circuit has made clear that the phrase "take him to sea," is a term of art and not to be applied literally. *In re Endeavor Marine*, 234 F.3d 287 (5th Cir. 2000) involved a crane operator assigned to a derrick barge in the Mississippi River. The district court granted the employer's motion for summary judgment on seaman status, finding the plaintiff worker's connection to the barge was not substantial in nature because his duties did not "take him to sea." *Id*. at 288. The Fifth Circuit reversed, holding that,

> when read in context, the 'going to sea' passage in *Harbor Tug* is a shorthand way of saying that the employee's connection to the vessel regularly exposes him 'to the perils of the sea.' *Harbor Tug*, 520 U.S. at 554-55, 117 S.Ct. 1535 (quoting *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172). In other words, we do not think that the *Harbor Tug* Court intended to articulate a new and specific test for seaman status.

*In re Endeavor Marine*, 234 F.3d at 291.

The Court held that "…the district court incorrectly concluded that [plaintiff] is not a Jones Act seaman merely because his duties do not literally carry him to sea." (*Id*. at 292.) The Court found that the phrase "perils of the sea" was not to applied literally since the Court held that the plaintiff, a crane operator on a crane barge in the Mississippi River "was regularly exposed to the perils of the sea." *Id*.

Despite the clarity of the decision in *Endeavor Marine*, the defendant-employer in *Naquin* made much the same argument as had been made by the defendant in *Endeavor Marine*. "…[The employer] emphasizes that [the plaintiff] rarely was required to spend the night aboard a vessel, that the vessels he worked upon were ordinarily docked, and that he almost never

ventured beyond the immediate canal area or into the open sea." *Naquin*, 744 F.3d at 934. But

the Court again rejected the importance of these factors. "[C]ourts have consistently rejected the

categorical assertion that workers who spend their time aboard vessels near the shore do not face

maritime perils. While these near-shore workers may face fewer risks, they still remain exposed

to the perils of a maritime work environment." *Id.* The Court emphasized that "we have dozens

of cases finding oilfield workers and other 'brown-water' workers on drilling barges and other

vessels qualified as seamen even though they spent all their work time on these vessels

submerged in quiet inland canals and waterways. Accordingly, we conclude that Naquin's

connection to the [employer's] vessel fleet was substantial in terms of nature." *Id*. at 935.

## IV. APPLICATION

### A. ISSUES TO BE DECIDED

Defendants concede that Plaintiff was a seaman when he worked as a deckhand aboard

CBC's tugs. (Doc. 10-2 at 17) ("…Plaintiff was once the member of a vessel crew when he was

deckhand on CBC tugs…"); *see also id*. at 3 ("Plaintiff was first hired to work for CBC in 2015

as a deckhand, a position in which he worked for approximately 3 years, and was assigned to a

CBC tug.")). Defendants do not contest that the barges upon which Plaintiff worked as a barge

readiness technician were "vessels."[5] Defendants do not contest that these vessels were "in

navigation" despite being docked for most of the time that Plaintiff worked on them as a barge

readiness technician. Finally, Defendants do not dispute that the barges upon which Plaintiff

worked constituted an "identifiable fleet," within the meaning of *Harbor Tug* since they were all

owned or controlled by CBC. (Doc. 10-1 at 2-3, ¶¶ 7-13.)

---

[5] Nor could they in good faith. *See, e.g*., *Starks v. Advantage Staffing, LLC*, 202 F. Supp. 3d 607, 612-13 (E.D. La. 2016) (noting that *Stewart* "cited two precedential cases treating barges or watercraft comparable to barges as 'vessels.' " (citing *Stewart*, 538 U.S. at 492 n.6)).

Rather, Defendants argue that when Plaintiff left his position as a deckhand and became a barge readiness technician, his new position represented a substantial, fundamental and permanent change such that only the time spent in his new position may properly be considered in deciding whether he meets the temporal requirement for seaman status. Defendants urge that, when so considered, Plaintiff is unable to establish that his connection to CBC vessels was substantial in duration or nature, and therefore, summary judgment is appropriate.

Plaintiff disputes that his job change was permanent, and therefore, his entire employment with CBC must be considered. When so considered, well over 30% of Plaintiff's time with CBC was as a seaman, and therefore, summary judgment is inappropriate. In the alternative, Plaintiff argues that even if the Court considers only his time as a barge readiness technician, he still meets the test for seaman status or, at the very least, substantial questions of fact on this issue preclude the granting of summary judgment.

Thus, there are two main questions presented. First, did Plaintiff's job change from deckhand to barge readiness technician represent a substantial, fundamental and permanent change in employment such that the Court should consider only his work as such in evaluating his relative time doing seaman's work? Second, if so, are there questions of fact regarding his new job such that a reasonable jury might find Plaintiff to be a seaman?

### B.  WAS PLAINTIFF'S JOB CHANGE SUBSTANTIAL, FUNDAMENTAL AND PERMANENT?

Plaintiff was originally hired in September of 2015 as a deckhand and member of the crew of the CBC's tug M/V Frank J. Golemi. (Doc. 14-2 at 6.) His duties included handling lines, building tow, cleaning, paint chipping, inspecting the barges, inspecting running lights, and standing watch. (Doc. 10-4 at 9-11.) In addition, he ensured that both tug and her tow were seaworthy, traveled with and worked on the tugs, and took his instructions from the captain of

13

the tug. (*Id*. at 11.) He worked a hitch of 28 days on and 28 days off (*Id*. at 6), worked a six-hour watch (*Id*. at 16), and ate his meals and slept on the vessel during his 28-day hitches (*Id*. at 7).

In or around December of 2017, Plaintiff applied to work as a barge readiness technician. (Doc. 10-4 at 10.) While Defendants represent in their *Statement of Uncontested Facts* that "Plaintiff requested a *permanent* transfer to the shoreside department…" (Doc. 10-1 at 6, ¶ 35; emphasis added (citing Doc. 10-4 at 20-21; *see also*, Doc. 10-2 at 13 ("…when he transferred to the shoreside department, and was moved to the barge readiness department, his status *permanently* changed." (emphasis added)), the cited pages do not support this statement; rather, the opposite is true. According to Plaintiff, his ultimate goal was to become a tankerman, but he was told that he would need to work as a barge readiness technician for a year before he could apply for the tankerman's job. (Doc. 10-4 at 21.) He testified he enjoyed working on boats and did not want to work shoreside (*id*.) but understood that this transfer was necessary in order to ultimately be transferred to a tankerman's position. When asked why he applied for the position of barge readiness technician, Plaintiff said, "Again, it meant a better future. They told me after I do a year of that, I could become a tankerman." (*Id*. at 2, 21.) Defendants concede as much in briefing. (Doc. 10-2 at 8.)

After becoming a barge readiness technician, some, but not all, of Plaintiff's job duties and conditions changed. Plaintiff would arrive each day from his home, perform his work and return home in the evening. (Doc. 10-1 at 3, ¶¶ 14-15.) He was paid by the hour and reimbursed his mileage. (Doc. 10-1 at 6, ¶ 33 (citing Doc. 10-4 at 18-19).) Some of Plaintiff's work was performed in the warehouse and included loading and unloading materials coming into and out of the warehouse. (Doc. 10-1 at 3, ¶ 11.)

However, "Plaintiff and other barge readiness technicians spent the majority of their time inspecting and maintaining moored CBC barges at the McKinney Fleet, at shipyards, and at other fleeting areas on the Mississippi River to ensure the barges were ready to be taken by tug to a customer facility for loading or discharging cargo." (*Id*. at 3, ¶ 13, citing Doc. 10-6 at 10, 13-14.)

Once at work, he was taken by tug to the barges he was to inspect. (*Id*. at 3, ¶ 18, citing Doc. 10-4 at 33; Doc. 10-6 at 15-16.) He inspected for barge damage, checked oil and water levels and inspected the barges' pumping engines. (*Id*. at 4 ¶ 21, citing Doc. 10-4 at 27-32; Doc. 10-5 at 8-9.) He performed certain kinds of repair work needed on the barges including pumping water out of cargo holds, repairing damaged hatches and dogs, cleaning stains on the decks, fixing broken winch cables and replacing missing scupper plugs.[6] (*Id*. at 4 ¶ 23, citing Doc. 10-4 at 15, 23 and 30.)

In his new job, he continued at times to do many of the jobs he had performed as a deckhand: he built tow (Doc. 14-2 at 12); helped put out running lights (*id*. at 13); assisted with the shifting of barges (*id*. at 23-24); inspected barges for damage (*id*. at 20); pumped water from the hatches (*id*. at 18); and cleaned barge decks (*id*. at 21). Plaintiff kept his tools on the tug. (Doc. 10-4 at 31.) He would sometimes bring groceries to the tug's crew and occasionally had a meal on the tug. (Doc. 10-4 at 45; *see also*, Doc 10-7 at 11-12.) At times, Plaintiff would help move the barges (Doc. 10-4 at 46) and would sometimes be on the barges as they were being shifted within the fleet. (*Id*. at 26.) At times, he would handle lines or tie up barges. (*Id*. at 12, 46.)

The Court finds that there are substantial questions of fact whether Plaintiff's job change was, or was not, such that only his new job duties as a barge readiness technician can be

---

[6] The Fifth Circuit has declared that "vessel repair is classic seaman's work…" *Naquin*, 744 F.3d at 934.

considered in weighing the amount of time he performed vessel-related work. If, to trigger the change-of-assignment doctrine, the job change must have been permanent, as suggested by the Fifth Circuit in *Becker* and *Zertuche*, there is evidence that this was not the case. Plaintiff testified that his time as barge readiness technician was only a temporary step required by Defendants in order to become a tankerman, which can be a seaman's job. *See, e.g. Kratzer v. Capital Marine Supply, Inc.,* 490 F. Supp. 222, 225 (M.D. La. 1980), *aff'd*, 645 F.2d 477 (5th Cir. 1981; *Wuestewald v. Foss Marine*, 319 F. Supp. 2d 1002, 1007 (N.D. Cal. 2004); *Elmadari v. Bell S.S. Co.*, 2:99 cv 1632, 2000 WL 33302240 at * 11 (E.D. Va. June 28, 2000).

But even if permanency of the new job is not required for the doctrine to apply, there are still significant fact questions regarding whether his job change was so "substantial" and "fundamental" as to require the Court to consider only the time spent in his new assignment. It is true that, in his new job, he was no longer living and working only on tugs and their tows, and his new duties included some land-based work, including working in the warehouse. But Defendants concede his new assignment as a barge readiness technician required Plaintiff to continue to spend the "vast majority" of his work-time on vessels in navigation. (Doc. 15 at 8; *see also* Doc. 10-1 at 3, ¶ 13; Doc. 10-5 at 15.)

According to Plaintiff, as set forth above, he continued to perform many of the same duties in his new job that he had performed in the old. In short, as is explained in greater detail in the next section, there are important fact questions regarding Plaintiff's status in his new job and the Court concludes that a reasonable jury could conclude that, even after his reassignment, he continued to qualify as a seaman.

The Court finds particularly persuasive *Sepulvado v. Alpha Drilling, LLC*, 730 F. Supp. 2d 591 (W.D. La. 2010). In *Sepulvado*, after having suffered a serious injury, Plaintiff received

notice that he was being "reassigned from [defendant's] barge rig operations to our land/office operations. This is effective immediately and is a permanent reassignment." 730 F. Supp. 2d at 594 (quoting record evidence). Some fifteen months later, while working as a galley hand on a land rig, he was injured on land while unloading a cooler from the back of a flatbed truck. Like Defendants in this case (Doc. 10-2 at 12), defendant in *Sepulvado* cited *Guidry v. S. Louisiana Contractors, Inc.*, 614 F.2d 447 (5th Cir. 1980), and argued that "its notice to plaintiff stating he had been permanently reassigned to land duties, coupled with the fact that plaintiff had worked solely on land for fifteen months prior to his second injury, terminated plaintiff's status as a seaman." 703 F. Supp. 2d at 601.

The plaintiff countered that "it was his understanding his assignment to land based work was only temporary" until a crane operator position became available on the barge and that the defendant had continued to pay him as a crane operator." (*Id*. at 602). The Court concluded that

> [w]ere this Court to determine which interpretation of the facts is correct, by way of this motion for summary judgment, it would usurp the role of the jury in this matter as the finder of fact. Since more than one conclusion could reasonably be drawn concerning plaintiff's seaman's status from these facts, partial summary judgment is not appropriate.

*Id*. at 602-03; *see also Billiot v. Key Energy Servs.*, No. 09-1023, 2011 WL 1841433 (W.D. La. May 12, 2011) (denying summary judgment on seaman status based on conflicting evidence as to whether reassignment was temporary or permanent.)

The cases cited by Defendants (Doc. 10-2 at 12-13) are not persuasive. While Defendants point to *Sepulvado*, as already discussed, this case supports denial of Defendants' motion. As pointed out by the Court in *Sepulvado*, the language relied upon by the defendant in *Guidry v. S. Louisiana Contractors, Inc., supra*, (and relied upon by Defendants here), "was stated in the context of the appellate court's review of the trial court's issuance of a directed verdict in favor

of defendant, after hearing the evidence at trial." 739 F. Supp. 2d at 601. By contrast, the issue before the Court in *Sepulvado* and the Court here is in the context of a summary judgment motion.

*White v. Louisiana Menhaden Co., Inc.*, 498 F. Supp. 126 (E.D. La. 1980) is totally inapposite in that the plaintiff there was suing his current employer but basing his seaman's claim on work as a seaman performed for a prior employer. *See id.* at 129 ("Thus, the same employer was not moving plaintiff from a traditional seaman's job to a temporary land side task, as in *Higginbotham* and *Guidry*. Instead, plaintiff changed employers, from Mayport to Menhaden, and changed job responsibilities and duties.").

*McInnis v. Parker Drilling Co.*, 04-1887 (La. App. 4 Cir. 6/1/05); 905 So.2d 1153, affirmed a fact finding by the trial court, after a full trial on the merits, that the plaintiff had been permanently reassigned to a new job which contained no vessel-related duties. 905 So.2d at 1159 ("It is undisputed in the instant case that all of the plaintiff duties in his new work assignment to Platform Rig–3 were non-vessel-related. Coupling this undisputed fact with the trial court's finding (which this Court may not overturn in the absence of manifest error) that the plaintiff's reassignment to Platform Rig–3 was permanent, compels the conclusion that the plaintiff was not a seaman at the time of his injury regardless of whether he may have qualified as such immediately prior thereto."). Here of course, there has been no trial on the merits, and there are disputed facts raised in opposition to the motion for summary judgment.

In their reply, Defendants point the Court to *Smith v. Nicklos Drilling Company*, 841 F.2d 598 (5th Cir. 1988). (Doc. 15 at 3.) Again, the facts there are fundamentally different than those before this Court. In *Smith*,

> [n]either of Smith's assignments required him to divide his time between vessel and land; rather, both his work location and status were permanently changed when the

floating rig on which he had worked was decommissioned. Smith argues that the permanency of this change should have been a fact for the jury to decide. The permanency, however, was undisputably established when the old barge rig was finally removed from service; he was never to return to the status of crewmember on that vessel.

*Smith*, 841 F.2d at 599. Here, of course, Plaintiff's new assignment required him to divide his time between land and vessels, the "vast majority" of that time being on vessels. Further, there is record evidence that Plaintiff's new assignment was only temporary, an intermediary step to a tankerman's position.

In summary, there are multiple fact issues here including the issue of whether Plaintiff's assignment was temporary or permanent. If the jury were to conclude, as it reasonably could, that the change-of-assignment doctrine does not apply, and even if the Court were to consider the entire year he was to act as a barge readiness technician, Plaintiff still would have spent approximately 2/3 of his time as a seaman over the course of his entire employment, well over the 30% required to survive summary judgment. Thus, summary judgment on this aspect of Defendants' motion is inappropriate and is denied.

### C.  ARE THERE FACT QUESTIONS REGARDING PLAINTIFF'S SEAMAN STATUS AS A BARGE READINESS TECHNICIAN?

Defendants argue that when Plaintiff became a barge readiness technician, he lost his status a seaman. Plaintiff argues that while his new job no longer required him to do the work of a deckhand assigned to a tug, he nonetheless performed enough vessel-related work to qualify as a seaman. At the very least, argues Plaintiff, there are questions of fact which make this issue a jury question. The Court agrees with Plaintiff and concludes that, even if the Court were to hold that the change of assignment doctrine applied as a matter of law, there are still significant fact questions as to Plaintiff's status which preclude the granting of summary judgment.

Returning to the first prong of Supreme Court's test for seaman status, there is no doubt that Plaintiff's work as a barge readiness technician contributed to the function of the fleet of vessels he serviced. According to Defendants,

> Plaintiff and other barge readiness technicians spent the majority of their time inspecting and maintaining moored CBC barges at the McKinney Fleet, at shipyards, and at other fleeting areas on the Mississippi River to ensure the barges were ready to be taken by tug to a customer facility for loading or discharging cargo.

(*Id*. at 3, ¶ 13.) More specifically, once at work, Plaintiff was taken by tug to the barges he was to inspect. (*Id*. at 3, ¶ 18, citing Doc. 10-4 at 33; Doc. 10-6 at 15-16.) Once on the barges, he inspected for barge damage, checked oil and water levels and inspected pumping engines. (*Id*. at 4 ¶ 21, citing Doc. 10-4 at 27-32; Doc. 10-5 at 8-9.) He performed certain kinds of repair and maintenance work needed on the barges including pumping water out of cargo holds, repairing damaged hatches and dogs, cleaning stains on the decks, fixing broken winch cables and replacing missing scupper plugs. (*Id*. at 4 ¶ 23, citing Doc. 10-4 at 15, 23 and 30.)

Furthermore, in his new job, he continued at times to do many of the jobs he had performed as a deckhand: he built tow (Doc. 14-2 at 12); helped put out running lights (*id*. at 13); assisted with the shifting of barges (*id*. at 23-24); inspected barges for damage (*id*. at 20); pumped water from the hatches (*id*. at 18); and cleaned barge decks (*id*. at 21). Plaintiff kept his tools on the tug. (Doc. 10-4 at 31.) He would sometimes bring groceries to the tug's crew and occasionally had a meal on the tug. (Doc. 10-4 at 45; *see also*, Doc 10-7 at 11-12.) At times, Plaintiff would help move the barges (*Id.* at 46) and would sometimes be on the barges as they were being shifted within the fleet. (*Id.* at 26.) At times, he would handle lines or tie up barges. (*Id*. at 12, 46.)

As to the substantial connection "in duration" requirement, Defendants acknowledge that after his change of job to barge readiness technician, "the majority of [Plaintiff's] time [was

spent] maintaining and inspecting" the barges in the fleet. (Doc. 10-1 at 3, ¶ 13.) Indeed, they

concede it was the "*vast majority*" of his time. (Doc. 15 at 8; emphasis added.) This far exceeds

the 30% "necessary to allow submission of the issue of seaman status to a jury…" *Becker v.*

*Tidewater, Inc.*, 335 F.3d 376, 388 (5th Cir. 2003).

Nonetheless, Defendants argue that Plaintiff's connection to the fleet was not "substantial

in nature." In support of this position, Defendant maintains that "Plaintiff was engaged in shore-

based longshore work inspecting and maintaining moored barges to ensure they were ready to be

loaded and unloaded. The LHWCA specifically provides coverage for employees engaged in

such work and expressly identifies 'ship repairm[e]n' as subject to its coverage." (Doc. 15 at 4;

citations omitted.) Defendants' argument ignores the language and holding in *Naquin* where an

identical argument was rejected by the Fifth Circuit.

> Specifically, EBI argues that because Naquin is a land-based ship-repairman, he is
> not connected to vessels in navigation and cannot qualify as a seaman.
>
> In support of its argument that Naquin is not a seaman, EBI primarily argues that
> Naquin is a land-based repairman who performs classic land-based harbor worker
> duties. As EBI points out, the Jones Act's land-based worker counterpart, the
> Longshore and Harbor Worker's Compensation Act ("LHWCA") expressly
> identifies "ship repairm[e]n" as subject to its coverage. Because the LHWCA and
> Jones Act are mutually exclusive compensation schemes, EBI argues, Naquin's
> coverage under the LHWCA precludes his coverage under the Jones Act.
>
> A few years ago, we agreed with EBI's position. However, the Supreme Court
> rejected this position and overruled our decision in *Pizzitolo in Southwest Marine,*
> *Inc. v. Gizoni* 502 U.S. 81, 87-88, 112 S. Ct. 486, 116 L.Ed.2d 405 (1991). There,
> the Court clarified that the Jones Act covers any worker who qualifies as a
> "seaman," without regard to whether a worker may also qualify for coverage under
> the LHWCA. This is true even in the case where a worker's job is specifically
> identified for coverage under the LHWCA. Thus, the fact that Naquin performed
> ship repair duties (identified as covered by the LHWCA) cannot distract us from
> the threshold inquiry: whether Naquin first qualifies as a seaman.

*Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 932 (5th Cir. 2014) (citations omitted).

*Chandris* held that "[T]his second prong constitutes a 'status-based' standard – *i.e.* 'it is not the employee's particular job that is determinative [of seaman status], but the employee's connection to the vessel.' " *Becker*, 335 F.3d at 388 (quoting *Chandris*, 515 U.S. at 364). "As a result, the [*Chandris*] Court speculated that under this standard, even a ship repairman, who may know nothing about boating or sailing could qualify as a seaman." *Id*. (citing *Chandris,* 515 U.S. at 363-64).

As discussed earlier, the "substantial in nature" part of the test is sometimes measured by evaluating the worker's exposure to what the Fifth Circuit in *Naquin* called "maritime perils," *Naquin*, 744 F.3d at 934, 935, or "perils of a maritime work environment," *id*. at 934, a more accurate phrase than the misleading term, "perils of the sea." Here, Defendants argue that "[n]one of Gage's work was of a seafaring nature. His duties regarding barges were limited to inspection, maintenance, and repair while the barges were docked. The hazards he faced were not 'perils of the sea' but instead were hazards all longshoreman face while working on the waterfront." (Doc. 10-2 at 18-19; *see also* Doc. 15 at 4.)

Again, Defendants ignore the language and holding of *Naquin* which stated explicitly,

> [C]ourts have consistently rejected the categorical assertion that workers who spend their time aboard vessels near the shore do not face maritime perils. While these near-shore workers may face fewer risks, they still remain exposed to the perils of a maritime work environment.

744 F.3d at 934.

The Court emphasized that:

> we have dozens of cases finding oilfield workers and other "brown-water" workers on drilling barges and other vessels qualified as seamen even though they spent all their work time on these vessels submerged in quiet inland canals and waterways. Accordingly, we conclude that Naquin's connection to the EBI vessel fleet was substantial in terms of nature.

*Id*. at 935.

Defendants attempt to distinguish *Naquin* because "Naquin was occasionally dispatched to repair vessels or fill in as a crane operator while the vessel was operating in open water and he often rode with the vessels, whereas Gage exclusively worked on vessels that were moored in the fleeting areas or at shipyards." (Doc. 10-2 at 16.) But this argument disregards record evidence that Plaintiff would sometimes be on the barges as they were being shifted within the fleet (Doc. 10-4 at 33), and that he was taken by tug every day to the barges he was to work on. (Doc. 10-1, at 3, ¶ 18, citing Doc. 10-4 at 33; Doc. 10-6 at 16.)[7] More fundamentally, however, the differences between the facts here and those in *Naquin* are differences in degree and do not eliminate the proper role of the jury in weighing and resolving these fact questions.

Furthermore, this Court's analysis is supported by other district court opinions applying *Naquin*. In *Starks v. Advantage Staffing, LLC.*, 202 F. Supp. 3d 607 (E.D. La. 2016), plaintiff was a contract laborer who worked on a "loading rig" at an unloading facility on the Mississippi River. *Id.* at 608-09, 612-13. After grain barges were unloaded by way of a conveyor, a bobcat located on the loading rig would be lowered into the hopper of a grain barge by way of a lift, also located on the loading rig. Once inside the hopper, the plaintiff would use the bobcat to clear the remnants of the grain from the grain barge. *Id*.

In support of their motion for summary judgment on seaman status, the defendants in *Starks* made arguments similar to those made by Defendants here. In rejecting those arguments, the Court said:

> Defendants next argue that Starks' connection to the grain barges at issue in this case was not sufficiently substantial in nature. Specifically, defendants argue that

---

[7] The fact that these duties may have been performed sporadically does not render them meaningless for purposes of raising a fact question for the jury. "Because [plaintiff] testified he completed vessel crew tasks 'at times' and on more than one occasion, the factual determinations of whether and how often [defendant] assigned such tasks to [plaintiff] is germane to the analysis of the nature of [plaintiff's] connection to the [defendant's] vessels." *Philip v. Hornbeck Offshore Services, L.L.C.*, 137 F. Supp. 3d 936, 947 (E.D. La. 2015).

Starks' work aboard the grain barges in question did not expose him to the "perils of the sea." Defendants' argument hinges primarily on the Supreme Court's 1997 decision in *Harbor Tug and Barge Co. v. Papai* and a variety of non-binding authority. In *Harbor Tug*, the Court noted that the "nature" inquiry "must concentrate on whether the employee's duties take him to sea." Defendants contend Fifth Circuit precedent created in the wake of *Harbor Tug* may not require that a plaintiff actually go to sea; however, [it] has reaffirmed that a plaintiff must be regularly exposed "to the special hazards and disadvantages to which they who go down to sea in ships are subjected."

Defendants (and Starks) fail to address the Fifth Circuit's 2014 decision in *Naquin v. Elevating Boats, L.L.C.* The Fifth Circuit in Naquin expressly held that a plaintiff need not literally work on the open sea in order to qualify as a seaman. The vessel repairman plaintiff in *Naquin*, "ordinarily" serviced vessels while they were anchored or docked and only occasionally serviced vessels while they were moved within a canal or on open water. Addressing the defendant's argument that the plaintiff performed "classic land-based harbor worker duties" and was not sufficiently exposed to the perils of the sea, the *Naquin* court stated that "courts have consistently rejected the categorical assertion that workers who spend their time aboard vessels near the shore do not face maritime perils."

The *Naquin* court concluded that it did not matter that the plaintiff in question "was rarely required to spend the night aboard a vessel, that the vessels he worked upon were ordinarily docked, and that he almost never ventured beyond the immediate canal area or onto the open sea." The Court noted that certain "traditional longshoreman work...may qualify for seaman status" where the plaintiff can establish "the requisite employment-related connection to the vessel." The *Naquin* court clearly indicated that the key inquiry is whether the worker is "exposed to the perils of a maritime work environment."

Here, the Court concludes, in light of *Naquin*, that Starks has adequately established that his work involved a substantial connection in nature to the barges in question. It does appear that Starks worked aboard the barges only while they were connected to the loading rig's conveyor system; however, the Court finds the activity of clearing grain from inside a barge's hopper to be sufficiently analogous to the sort of work performed by the plaintiff in Naquin. Starks' work inside the grain barges exposed him to the perils of a maritime work environment. The Court therefore concludes that Starks' connection to the barges in question could be sufficiently substantial in nature to satisfy the test laid out in *Chandris*.

*Starks*, 202 F. Supp. 3d at 613–14 (citations omitted).

In *Haas v. Beatty Street Properties, Inc.*, No. 3-13-CV-302, 2014 WL 2932258 (S.D. Tex. June 27, 2014), the defendant employer moved for summary judgment on the issue of

seaman status. The plaintiff was an assistant port engineer responsible for maintaining the mechanical systems on defendant's boats. *Id*. at *1. The vessels on which he worked were docked approximately 60% of the time and in motion approximately 40% of the time. *Id*. The Court phrased the issue as follows: "The question presented in this maritime dispute is whether a plaintiff who spends a majority of his employment maintaining and repairing boats that are docked on the water is a seaman under the Jones Act." *Id.*

> In answering that question, Judge Costa wrote:
>
> *Naquin* is indistinguishable, in any meaningful sense, from this case. Indeed, [defendant] makes the same point in its summary judgment motion—[plaintiff] did not engage in the type of work that would subject him to actual maritime dangers—that Judge Jones made in her dissent in *Naquin*. Judge Jones argued that the majority "cit[ed] no facts showing that *Naquin*, who spent nearly all of his time on boats moored to a dock, faced any maritime perils in the ordinary course of his duties." [*Naquin*, 744 F.3d at 943] (Jones, J., dissenting) (emphasis omitted). [Plaintiff] too spent "nearly all of his time on boats moored to a dock," and under *Naquin*, that fact, combined with his line of work, gets him past summary judgment.

*Haas,* 2014 WL 2932258, at *2 (citations omitted).

The Court finds the cases cited by the Defendants are distinguishable or were decided before and are inconsistent with *Naquin. Richard v. Mike Hooks, Inc*., 01-0145 (La. 10/16/01); 799 So.2d 462 was not decided at the summary judgment stage but, rather, after a trial on the merits of the seaman status issue. And, as stated by the Court in distinguishing the plaintiff's cases, "[w]hile some of the facts in [these cases] may be similar to some facts in this case, the totality of the circumstances are distinguishable. The determination of seaman status is inherently fact intensive, and each case must be decided under the facts presented therein." *Id*. at 467.

*Saienni v. Capital Marine Supply*, No. 02-2509, 2005 WL 940558 (E.D. La. 2005) granted summary judgment to an employer on the issue of seaman status. While there are

similarities with the present case, there are also differences. According to Plaintiff in this case, in addition to doing repairs on the CBC vessels, he sometimes performed duties that were akin to those of a traditional deckhand. He inspected the barge damage, checked oil and water levels and inspected pumping engines. (Doc. 10-1 at 4, ¶ 21, citing Doc. 10-4 at 27-32; Doc. 10-5 at 8-9.) He did minor repair work needed on the barges including pumping water out of cargo holds, repairing damaged hatches and dogs, cleaning stains on the decks, fixing broken winch cables and replacing missing scupper plugs. (*Id*. at 4 ¶ 23, citing Doc. 10-4 at 15, 23 and 30.) In addition, he helped build tow (Doc. 14-2 at 12); helped put out running lights (*id*. at 13); assisted with the shifting of barges (*id*. at 23-24); inspected barges for damage (*id*. at 20); pumped water from the hatches (*id*. at 18); and cleaned barge decks *(id*. at 21). He occasionally had a meal on the tug. (Doc. 10-4 at 45; Doc 10-7 at 11-12.) He would sometimes be on the barges as they were being shifted within the fleet. (Doc. 10-4 at 26.) At times, he would handle lines or tie up barges. (*Id.* at 12, 46)

By contrast, the plaintiff in *Saienni* did only traditional repair work and performed no deckhand duties. 2005 WL 940558 at *11. This difference was also used by the district court in *Naquin* to distinguish the *Saienni* case.

> While Plaintiff's employment as a repair supervisor is in some ways similar to those of the plaintiff in *Saienni*, they are not identical. While the plaintiff in *Saienni* performed only traditional repair work, here, a substantial part of Plaintiff's work involved deckhand duties, such as painting, repairing leaks, engine maintenance, fixing cracks in the hulls of the vessels, chipping, and cleaning the vessels, as well as other routine maintenance activities.

*Naquin v. Elevating Boats, LLC*, 842 F. Supp. 2d 1008, 1018 (E.D. La. 2012), *aff'd sub nom*.

*Naquin v. Elevating Boats, L.L.C*., 744 F.3d 927 (5th Cir. 2014).

Defendants also point this Court to *Schultz v. Louisiana Dock Co*., 94 F. Supp. 2d 746 (E.D. La. 2000), which granted summary judgment to the employer of a worker claiming to be a

seaman. *Schultz* is distinguishable on two separate grounds. First, the Court found Schultz was not a seaman because the barges on which he worked were not an identifiable fleet. "The barges on which [Schultz] worked at the facility were owned by various entities, and at any given time his assignment to those vessels was random and impermanent. He did not owe his allegiance to a vessel or group of vessels under common ownership or control." *Id.* at 750 (citation omitted). That is clearly not the case here.

Second, the Court denied Schultz seaman status because "[n]one of plaintiff's work was of a *seagoing* nature. Plaintiff's duties were limited to inspecting and repairing barges moored at the facility. He *did not go to sea or face the perils of the sea* in the manner associated with seaman status." *Id.* at 750 (emphasis added). The literal use of those phrases was specifically rejected in the later Fifth Circuit cases of *In re Endeavor Marine*, *supra,* and *Naquin*, *supra*.

Finally, Defendants rely on the Second Circuit decision of *In re Buchanan Marine, L.P.*, 874 F.3d 356 (2d Cir. 2017), *cert. denied sub nom. Volk v. Franz*, 138 S. Ct. 1442, 200 L. Ed. 2d 718 (2018). The Second Circuit takes a fundamentally different view from that of the Fifth Circuit on the issue before the Court. In *Buchanan*, the court found that the plaintiff was not a seaman because "none of [plaintiff's] work was of a seagoing nature. [Plaintiff's] duties were limited to inspecting and repairing barges that were secured to the dock at the Clinton Point facility. [Plaintiff] did not go to sea and he was not exposed to the 'perils of the sea' in the manner associated with seaman status." *Id.* at 368. This view, again, was specifically rejected by *In re Endeavor Marine* and *Naquin*. This Court is bound to follow Fifth Circuit precedent.

In summary, the Court finds that there are multiple issues of fact regarding Plaintiff's connection to Defendants' fleet of vessels which precludes summary judgment and the motion for summary judgment on this issue is denied.

## V.     PLAINTIFF'S 905(b) CLAIM

Defendants argue that Plaintiff's 905(b) claim should be dismissed since the accident occurred on land and there is no allegation or even suggestion that vessel negligence of any kind was involved in causing the accident. (Doc. 10-2 at 19-20.) Plaintiff has remained silent on this issue.

Plaintiff's claim could be dismissed for this reason alone. " 'The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal.' " *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) (citations omitted)); *see also United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation . . . is a failure to brief and constitutes waiver"). " 'By analogy, failure to brief an argument in the district court waives that argument in that court.' " *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp. 2d at 748 n.10); *see also Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at \*3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at \*5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument). *See also Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.) (finding that, because plaintiff failed to respond to defendant's argument on an issue, the Court could conclude that a policy exclusion applied (citing, *inter alia*, *JMCB*, 336 F. Supp. 3d at 634)).

However, even if Plaintiff had opposed this portion of the motion, it is clear that this part of the motion is meritorious since the accident occurred on land, without any vessel involvement. *See* 33 U.S.C. § 905(b); *May v. Transworld Drilling Co*., 786 F.2d 1261, 1263-65 (5th Cir. 1986).

**VI.    CONCLUSION**

For the foregoing reasons, Defendants' *Motion for Summary Judgment* (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion regarding Plaintiff's claims under 33 U.S.C. § 905(b) is **GRANTED** and that claim is dismissed. In all other respects, the motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on the 3rd day of January, 2020.

_____
**JUDGE, JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**